Concurring Opinion by
Adkins, J.,
which Barbera, C.J., and McDonald, J., join.
Respectfully, I concur with the judgment of the Majority, but disagree with its analysis of the Miranda issue. I would not reach the question of whether Mr. Gupta’s Miranda right to counsel was violated because even if it were, the statements he seeks to suppress were never admitted during his trial. More importantly, I write separately because in addressing the merits of this issue, the Majority validates interrogation practices that erode suspects’ Miranda rights.
The remedy for a Miranda violation is to deny the State the ability to use the defendant’s statements in its case in chief, but the statements may still be used to impeach the defendant. Oregon v. Hass, 420 U.S. 714, 722-23, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Harris v. New York, 401 U.S. 222, 224-26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Here, Mr. Gupta’s interrogation statements were only used to impeach him dur *139 ing cross-examination, which would have been permitted even if the trial court had suppressed the statements he made during the interrogation. Any controversy that existed due to the denial of Mr. Gupta’s motion to suppress was mooted when the statements were only used to impeach him. Therefore, it is not necessary to address the merits of Mr. Gupta’s contentions.
I am concerned that through its analysis of Mr. Gupta’s arguments the Majority opinion will encourage interrogation practices that infringe on suspects’ Miranda rights. Mr. Gupta claims that he was attempting to invoke his Miranda right to counsel when he was interrupted mid-sentence by Detective Hamill. Regarding this conduct, the Majority concludes that “nothing prevented Mr. Gupta from requesting a lawyer at any other time during the fifty-five-minute interrogation. If he wanted the assistance of counsel before speaking to the detectives, he had many opportunities to say so.” Maj. Op. at 136, 156 A.3d at 804. The Majority’s conclusion overlooks the fact that interruption, in general, is a common police interrogation technique. See Saul M. Kassin et al., Police Interviewing and Interrogation: A Self-Report Survey of Police Practices and Beliefs, 31 Law & Hum. Behav. 381 (2007). This technique is taught in one of the most widely used police officer training programs. Critics Corner: The Reid Technique,[1] John E. Reid & Assoes., Inc., https://www.reid.com/educationaLinfo/eritic technique.html (last visited March 15, 2017) [https://perma.cc/7 KEY-86U5]; see also Kassin, supra, at 388. Indeed, according to one study, “[¡Interrupting a suspect’s denials and objections” is the eighth most commonly used interrogation technique. Kassin, supra, at 389. Detective Hamill even testified at the suppression hearing that interrupting a suspect is her “methodology.”
Although the interruption methodology is effective and acceptable, it should not be used it to hamper individuals’ *140 exercise of their Miranda rights. Miranda warnings exist as a counterbalance to the coercive atmosphere of custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 467-70, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A defendant invokes his right to an attorney if he “articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). In applying the reasonable police officer standard, this Court has examined both the statement and the context in which it was made. See Williams v. State, 445 Md. 452, 476-77, 128 A.3d 30 (2015) (analyzing the statement “I don’t want to say nothing. I don’t know” in isolation and as part of an “extended colloquy”); Ballard v. State, 420 Md. 480, 493-94, 24 A.3d 96 (2011). In Ballard, we held that a reasonable officer in the same circumstances would understand the statement “You mind if I say no more and just talk to an attorney about this” to be an unambiguous request for counsel. Ballard, 420 Md. at 493-94, 24 A.3d 96. Although we concluded that the statement alone was sufficient to invoke the suspect’s Miranda right to counsel, we found that the detective’s follow-up question, “What benefit is that going to have?” and the suspect’s response, “I’d feel more comfortable with one,” bolstered our holding. Id. at 494, 24 A.3d 96. Using a similar approach to the one we used in Ballard, the Georgia Supreme Court held that a criminal defendant invoked his right to remain silent even though a police officer interrupted him after he said, “I don’t want to talk ....” Green v. State, 275 Ga. 569, 570 S.E.2d 207, 210 (2002). It explained, “[Wjhatever the proper definition of a ‘reasonable police officer’ might be, that phrase must contemplate interrogators who are not actively seeking to interrupt and/or ignore the suspect’s assertion of rights.” Id. at n.10 (emphasis added). I agree.
Here, given when the interruption occurred—seconds after Detective Hamill finished reading Mr. Gupta his Miranda rights—a reasonable police officer would have understood that when Mr. Gupta began saying, “When do I get to talk ...,” he *141 was attempting to assert his rights. Even if a reasonable officer may have been unsure whether this was an attempted invocation, Mr. Gupta’s pre-interrogation requests for counsel resolve any ambiguity. Although Detective Hamill did not remember whether she was told about Mr. Gupta’s prior requests, Detective Fumagalli, who was also in the room, testified that she was aware of them. When asked whether she knew if there was a “substantial probability” that Mr. Gupta was going to ask for a lawyer if she did not cut him off, even Detective Hamill acknowledged that “it certainly is a possibility.” The timing—only seconds after finishing the Miranda warnings—and this testimony, undercut the Majority’s assertion that “nothing prevented Mr. Gupta from requesting a lawyer at any other time during the ... interrogation” because her own methodology, if repeated, may have done just that. Maj. Op. at 136, 156 A.3d at 804.
Chief Judge Barbera and Judge McDonald have authorized me to state that they agree with the views set forth in herein.

. The U.S. Supreme Court discussed several aspects of The Reid Technique in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to illustrate the psychological coercion used in police interrogations. Id. at 448-55, 86 S.Ct. 1602.